UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

HOWARD E. CROWDER,                    )
                                      )
          Plaintiff,                  )
                                      )
v.                                    )     No.:   3:08-CV-509
                                      )            (VARLAN/SHIRLEY)
UNITED STATES DEPARTMENT              )
OF LABOR,                             )
                                      )
          Defendant.                  )

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on plaintiff's Motion for Judgment [Doc. 15] and

accompanying Brief in Support of Motion for Judgment [Doc. 16].  Defendant filed a Brief

in Opposition to Plaintiff's Motion for Judgment [Doc. 17].  The motion is now ripe for this

Court's consideration.

## I.     Factual Background

Plaintiff was employed by Martin Marietta Energy Systems and Lockheed Martin

Energy Systems, Inc. at the Y-12 Plant in Oak Ridge, Tennessee from May 5, 1969 until

January 31, 1997 [Doc. 1, ¶ 1; Doc. 7, ¶ 1].  Plaintiff filed the Complaint in this case on

December 22, 2008, alleging that he contracted moderately differentiated adenocarcinoma

of the prostate–prostate cancer–as a result of his exposure to toxic substances during his

employment at the Y-12 Plant [Doc. 1, ¶ 2].  Defendant denied that allegation [Doc. 7, ¶ 2].

## II.      Procedural History

Plaintiff was diagnosed with prostate cancer on January 25, 2002 [AR, 453].[1] Plaintiff filed a claim for benefits under former Part D of the Energy Employees Occupational Illness Compensation Program Act (the "Act") on August 27, 2002 [*Id.*, 453-58].   Congress subsequently repealed Part D, *see* 42 U.S.C. § 7385o, but provided that "any application previously filed . . . pursuant to part D shall be considered to have been filed . . . as a claim for benefits pursuant to" newly-enacted Part E.   42 U.S.C. § 7385s-10(g).

Defendant thereafter sent a letter to plaintiff on May 13, 2006, informing him that the medical evidence he submitted to support his claim of illness was insufficient to demonstrate that his employment as a contractor employee at the Y-12 Plant exposed him to certain toxic substances, and that this exposure was a significant factor that at least as likely as not caused, aggravated, or contributed to his claimed illness [AR, 218].   This letter invited plaintiff to submit additional information about his toxic exposure in support of his claim for further review by the defendant [*Id.*].

In response to this letter, plaintiff submitted a letter dated June 14, 2006 from his urologist, Dr. Lee Congleton, III [*Id.*, 215].   In this letter, Dr. Congleton stated that the "inhalation of the toxic chemicals [t]richlor[o]ethylene and [m]ercury are probably significant factors and as likely as not contributed to the development of [Mr. Crowder's] malignant prostate cancer" [*Id.*].   On September 25, 2006, the Labor Department's District

_____

[1]All references to "AR" are to the administrative record in this case.

2

Office in Jacksonville, Florida (the "district office") issued a Notice of Recommended Decision finding insufficient evidence in plaintiff's case file to establish that it was at least as likely as not that his exposure to toxins during his employment was a significant factor in causing, contributing to, or aggravating his prostate cancer [*Id.*, 188-89].

In a letter to the Labor Department's Final Adjudication Branch (the "FAB") dated October 23, 2006, plaintiff objected to this recommended notice, submitted another copy of Dr. Congleton's June 14, 2006 letter, and requested an oral hearing before the FAB [*Id.*, 182-83]. That hearing was held before Jeana LaRock, a Hearing Representative of the FAB, on February 6, 2007, in Oak Ridge, Tennessee [*Id.*, 146-71]. Reviewing Dr. Congleton's June 14, 2006 letter at the hearing, Ms. LaRock explained to plaintiff that Dr. Congleton's diagnosis lacked a supporting rationale, like a medical study demonstrating a connection between trichloroethylene or mercury and prostate cancer, or a discussion of similarly-situated patients whom Dr. Congleton had treated in the past [*Id.*, 154-62].

On March 15, 2007, Dr. Congleton sent Ms. LaRock a letter intended to "substantiate" his June 14, 2006 letter [*Id.*, 132]. This letter included three attachments: a list of the "Causes & Risk Factors" of prostate cancer from the Cornell University Department of Urology [*Id.*, 133-134]; an explanation of the "Causes of Cancer" from Novartis Oncology [*Id.*, 135-138]; and a Safety and Health brochure entitled "Cancer-Causing Chemicals in the Workplace" distributed by a union representing public employees in New York State [*Id.*, 139-142]. The Novartis document lists mercury, and the union brochure lists trichloroethylene, as carcinogens [*Id.*, 138, 142].

3

On April 18, 2007, the FAB remanded plaintiff's claim to the district office, instructing it to "review and/or develop the medical information and supporting medical studies" submitted by Dr. Congleton, and to "determine the relevance of the information in regard to the condition of prostate cancer" [*Id.*, 129-131]. On March 27, 2008, the district office issued a second Notice of Recommended Decision, again finding insufficient evidence in plaintiff's case file to establish that his exposure to toxins during his employment was a significant factor in causing, contributing to, or aggravating his prostate cancer [*Id.*, 80]. In making this recommendation, the district office relied in part on the report of the District Medical Consultant (the "DMC"), who considered the "internet reports" submitted by Dr. Congleton insufficient to satisfy the "at least as likely as not" standard required by the regulations [*Id.*, 79, 84-85].

On May 5, 2008, plaintiff objected to this recommended notice, and requested another hearing before the FAB [*Id.*, 73-74]. That hearing was held before Armando J. Pinelo, a different Hearing Representative of the FAB, on July 29, 2008 [*Id.*, 12-37]. At that hearing, counsel for plaintiff resubmitted the Cornell and Novartis documents attached to Dr. Congleton's March 15, 2007 letter, along with five additional articles plaintiff and his counsel located on the internet related to the potential connection between cadmium, another toxin, and prostate cancer [*Id.*, 28-32, 45-62]. Only the last of these additional articles mentions trichloroethylene, describing it as a "known or suspected carcinogen" [*see id.*, 62]. None mentions mercury.

4

On November 3, 2008, the FAB issued its Notice of Final Decision Following a Hearing [*Id.*, 4-8]. That Final Decision discussed the June 14, 2006 letter submitted by Dr. Congleton, the attachments to Dr. Congleton's March 15, 2007 letter that were intended to substantiate his June 14, 2006 letter, and the DMC report, in finding insufficient evidence "to establish that exposure to toxic substances was at least as likely as not a significant factor in aggravating, contributing to, or causing [Mr. Crowder's] prostate cancer" [*Id.*, 5-7].

On July 30, 2009, plaintiff filed a motion for judgment [Doc. 15] and an accompanying brief in support of his motion for judgment [Doc. 16], in which he argues that the defendant's denial of his claim for benefits was arbitrary and capricious in that it (1) fails to properly weigh the evidence and (2) overlooks substantial evidence in support of his case. Plaintiff's motion reduces to a single argument: that the defendant's denial of his claim for benefits was arbitrary and capricious because of the defendant's failure "to discuss [t]richloroethylene [and mercury] exposure as a potential cause of Mr. Crowder's cancer despite the opinion of Dr. Congleton attributing it as a probable cause of Mr. Crowder's cancer" [*Id.*].[2]

Defendant filed a brief in opposition to plaintiff's motion for judgment on September 15, 2009, contending that the defendant adjudicated plaintiff's claim in a thorough and

---

[2]Plaintiff's motion mentions his exposure to both trichloroethylene and mercury, but settles ultimately on the defendant's alleged failure to consider the former toxin as the basis for his arguments. This Court nevertheless considers the defendant's examination of plaintiff's exposure to both toxins.

deliberate manner, and that its November 3, 2008 denial of that claim was not arbitrary and capricious [Doc. 17].

The Court has carefully reviewed plaintiff's motion, his brief in support of that motion, the brief in opposition to that motion, and the underlying record. For the reasons that follow, plaintiff's motion will be denied.

## III.  Standard of Review

42 U.S.C. § 7385s-6(a) provides that "[a] person adversely affected or aggrieved by a final decision . . . under . . . [P]art [E] may review that order in the United States district court in the district in which the injury was sustained . . . ."  § 7385s-6(a) further provides that the district court "shall have jurisdiction over the proceeding and shall have the power to affirm, modify, or set aside, in whole or in part, such decision."  The district court "may modify or set aside such decision," however, "only if the court determines that such decision was arbitrary and capricious."  *Id.*

The arbitrary and capricious standard "is the least demanding review of an administrative action."  *Coal. for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 475 (6th Cir. 2004).  "It requires the party challenging the agency's action to 'show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations.'"  *Id.* at 475 (quoting *McDonald Welding v. Webb*, 829 F.2d 593, 595 (6th Cir. 1987)).  "If there is any evidence to support the agency's decision, the agency's determination is not arbitrary or capricious." *Coal. for Gov't Procurement*, 365 F.3d at 475-76.

6

**IV.    Analysis**

The burden is upon plaintiff in this action to "show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes and regulations." *McDonald Welding*, 829 F.2d at 595.  As noted, plaintiff argues that the denial of his claim for benefits was improper because of the defendant's failure "to discuss [t]richloroethylene [and mercury] exposure as a potential cause of Mr. Crowder's cancer despite the opinion of Dr. Congleton attributing it as a probable cause of Mr. Crowder's cancer" [Doc. 16].  Plaintiff begins his argument by pointing to Dr. Congleton's June 14, 2006 letter stating that "the inhalation of the toxic chemicals [t]richlor[o]ethylene and [m]ercury are probably significant factors and as likely as not contributed to the development of [Mr. Crowder's] malignant prostate cancer" [Doc. 16; *Id.*, 215].

Plaintiff further argues that this diagnosis was supported by the Health and Safety brochure Dr. Congleton attached to his 2007 follow-up letter, which listed trichloroethylene as a carcinogen [Doc. 16; *Id.*, 142].  Plaintiff faults the DMC in particular for "not even address[ing] the [t]richloroethylene [and mercury] exposure as a possible cause of Mr. Crowder's prostate cancer," and instead "tak[ing] great effort to defeat the possible contentions that [c]admium or [b]eryllium exposure could have caused Mr. Crowder's cancer" [Doc. 16].  Plaintiff argues, finally, that the defendant is "not entitled to deny a claim without even considering medical evidence attributing exposure to a specific toxin as causing the claimant's condition," as he alleges the defendant did here [Doc. 16].

7

Plaintiff's argument is without merit. In the first place, as the defendant correctly points out, plaintiff based his claim for benefits in part on his exposure to cadmium and beryllium, as is evidenced by his submission at the July 29, 2008 hearing before the FAB of five articles not previously submitted, the first four of which detail alleged links between cadmium exposure and prostate cancer [*see* Doc. 17; *see also* AR 21-22, 110]. Insofar as plaintiff objects to the DMC's extensive discussion of plaintiff's exposure to those substances in his report to the FAB, that objection is misplaced. The DMC was simply responding to the arguments raised by plaintiff on the basis of his workplace exposure to cadmium and beryllium.

The crux of plaintiff's argument, however, is that neither the DMC, nor the district office, nor ultimately the FAB, took into account his arguments as to his trichloroethylene and mercury exposure. Plaintiff is wrong. Far from failing to consider plaintiff's trichloroethylene and mercury exposure in his March 20, 2008 opinion, the DMC explicitly considered the "Internet reports" supplied by Dr. Congleton along with his March 15, 2007 letter as part of the "totality of evidence presented," in concluding that it was not "at least as likely as not that exposure to toxic substances at [the Y-12 Plant] was a significant factor in aggravating, contributing to, or causing [Mr. Crowder's] prostate" cancer [AR, 84-85].

Nor did the district office, as plaintiff implies, fail to consider his trichloroethylene and mercury exposure in its March 27, 2008 Notice of Recommended Decision. To the contrary, the district office specifically acknowledged that Dr. Congleton submitted a letter on June 14, 2006 indicating that the "inhalation of the toxic chemicals trichloroethylene and

8

mercury are probably significant factors and as likely as not contributed to the development of his malignant prostate cancer" [*Id.*, 79]. It also considered the March 19, 2007 letter submitted by Dr. Congleton, along with the attachments to that letter [*Id.*, 79]. Finally, it considered the DMC's conclusion that the "totality of evidence presented does not show it to be at least as likely as not exposure to toxic substances at [the Y-12 Plant] was a significant factor in aggravating, contributing to, or causing [Mr. Crowder's] prostate" cancer, in reaching the same conclusion [*Id.*, 79-80].

Nor, finally, did the FAB fail to address the issue of plaintiff's trichloroethylene and mercury exposure in the final decision it issued on November 3, 2008. To the contrary, the FAB specifically acknowledged the district office's receipt of Dr. Congleton's June 14, 2006 letter stating that "the inhalation of the toxic chemicals [t]richloroethylene and [m]ercury [at Y-12] are probably significant factors and as likely as not contributed to the development of" plaintiff's prostate cancer [*Id.*, 5]. The FAB noted that Dr. Congleton provided no evidence to support this assertion, but that his follow-up letter of March 15, 2007 included articles from the Department of Urology at Cornell and Novartis Oncology [*Id.*]. The FAB further noted that the district office asked the DMC to review the medical records on file, including Dr. Congleton's letters and their attachments, and provide an expert opinion as to whether plaintiff's prostate cancer was causally related to toxic exposure at the Y-12 Plant [*Id.*]. The FAB explained, however, that the DMC reported to the district office that "exposure to toxic substances at Y-12 was not 'at least as likely as not' a significant factor in aggravating, contributing to, or causing" plaintiff's prostate cancer [*Id.*]. The FAB noted finally that

9

plaintiff personally testified in support of his claim for compensation in Oak Ridge, Tennessee on July 29, 2008 [*Id.*]. Like every other administrative component that reviewed plaintiff's claim, the FAB concluded that the evidence was "insufficient to establish that exposure to toxic substances was at least as likely as not a significant factor in aggravating, contributing to, or causing [Mr. Crowder's] prostate cancer" [*Id.*, 7].

Finally, and as further evidence of the defendant's exhaustive consideration of the medical evidence offered by Dr. Congleton, this Court notes the explicit comparison undertaken by the FAB between Dr. Congleton's medical opinion and the DMC's medical opinion. As the FAB points out in its November 3, 2008 final decision, "[i]f one medical opinion holds more probative value [than another, the FAB] will base its determination of entitlement on that medical conclusion" [*Id.*, 7 (citing 20 C.F.R. § 30.411(a))]. In comparing the DMC's medical opinion to that of Dr. Congleton, the FAB noted specifically that the DMC reviewed a more authoritative and comprehensive medical source in reaching his opinion than did Dr. Congleton, and that Dr. Congleton's diagnosis was not "well-rationalized" [AR, 7]. Rather than ignoring the relevant factual and medical evidence, as plaintiff argues, the FAB instead followed the statutory guidelines precisely, considering fully the medical opinions in the case, and ultimately crediting the opinion of the DMC rather than that of Dr. Congleton.

The defendant's denial of plaintiff's claim for benefits was not arbitrary and capricious. Contrary to plaintiff's assertions, the defendant properly weighed the evidence

in the case, and did not overlook substantial evidence in support of plaintiff's case.

Accordingly, plaintiff's motion for judgment will be denied.

**V.     Conclusion**

Plaintiff's Motion for Judgment [Doc. 15] is hereby **DENIED**.

IT IS SO ORDERED.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE